

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ABIR ALI,

      Petitioner,

v.                           Civil Action No. 3:17CV656

LAWRENCEVILLE CORRECTIONAL CENTER,

      Respondent.

### MEMORANDUM OPINION

Abir Ali, a Virginia inmate proceeding pro se, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition," ECF No. 26) challenging his 2013 conviction in the Circuit Court of Fairfax County (hereinafter "Circuit Court") of second-degree murder. On his § 2254 Petition form, Ali argues that he is entitled to relief on the following grounds:[1]

> Claim One: "Counsel failed to conduct a pre-trial investigation [and] interview Ms. Parada which could divulge elicit essential impeachment evidence. [The] result of this neglect prejudiced the case by a bias[ed] witness." (§ 2254 Pet. 6.)
>
> Claim Two: "Counsel failed to impeach Ms. Parada with the help of clear [and] convincing evidence which [was] not represented [and] resulted

---

[1] The Court corrects the capitalization and punctuation in quotations from Ali's submissions. Ali filed hundreds of pages of attachments to his § 2254 Petition. The Court employs the pagination assigned by the CM/ECF docketing system for citations to those submissions. The Court also employs the CM/ECF pagination for citations to attachments to the Brief in Support of Motion to Dismiss filed by Respondent.

[in] an unconstitutional incarceration according to Strickland[ v. Washington, 466 U.S. 668, 687 (1984)]." (Id. at 8.)

Claim Three: "Counsel didn't [(a)] cross-examine the medical expert, Dr. Diangelo, [and, (b)] did not call the court-appointed expert for the defense, Dr. Fowler, who could testify regarding Mr. Patel's accidental death [which] resulted [in] error." (Id. at 9.)

Respondent has filed a MOTION TO DISMISS AND RULE 5 ANSWER ("Motion to Dismiss," ECF No. 33) arguing that Ali's claims lack merit. Despite the provision of notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Ali filed no response.

## .I. FACTUAL AND PROCEDURAL HISTORY

Ali was initially charged with first-degree murder. (Sept. 23, 2013 Tr. 23.) After a jury trial, Ali was convicted of second-degree murder and was sentenced to eighteen years of incarceration. (ECF No. 35-1, at 1-2, 4.) Ali appealed his conviction, arguing that insufficient evidence existed to support his conviction for second-degree murder. (ECF No. 35-2, at 1.) In rejecting this claim, the Court of Appeals of Virginia aptly summarized the evidence of Ali's guilt as follows:

Appellant was convicted of second-degree murder. He contends the evidence is insufficient to support his conviction. Specifically, he argues the "trial court erred by finding sufficient evidence that Bharat Patel's death was an unlawful killing and not an accidental killing." He also contends the evidence failed to establish he "possessed the requisite malice

2

to establish murder over voluntary manslaughter as the evidence supported that [he] and [the victim] were engaged in mutual combat thereby negating the malice necessary for second degree murder."

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438; 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence proved that appellant was romantically involved with the victim's wife. In June 2012, the victim, Bharat Patel, returned to his residence and discovered appellant there with his wife. Saraswati Patel, the victim's spouse, testified that on June 8, 2012, after Patel had learned of her affair with appellant, she called appellant and informed him Patel had threatened to kill her, himself, and appellant if Saraswati Patel had any contact with appellant. Later that night, Saraswati Patel again called appellant and told him she would soon be driving home with her husband from the restaurant where they worked. She also told appellant she was scared and did not want to go home with her husband. Appellant indicated he might come get her from the residence. Once home, Saraswati Patel went to her room. Later that night, she woke up and noted her husband was not in the residence. After she was unable to find him, she called the police.

Digma Medina De Parado Medrano testified she was parking her car at the apartment complex where the Patels lived when she saw a man walk in front of her car twice. She identified him as appellant. She saw him approach an older man. When the two men got close to each other, appellant removed a black object from his pocket. Medrano explained it appeared that appellant "hugged" the older man and she saw a blue light emit from the black object. Appellant placed the object on the older man's stomach and arm. After the older man was touched with the object a second time, he fell to the ground. Appellant then moved the older man into some nearby bushes. She heard the older man calling for help, then heard silence and saw appellant emerge from the bushes. She called the police.

The police found the victim's body in the bushes and located bloodstains throughout the area. The

victim's autopsy revealed he had a number of abrasions on his body and a laceration on the left side of his head. Two of the victim's teeth had been knocked out during the altercation. The medical examiner testified Patel died from blunt head trauma.

When first confronted by the police, appellant denied having any involvement with the incident. Later, he admitted traveling to the Patels' apartment complex and that he encountered the victim there. Appellant claimed the two struggled and that he defended himself against Patel. He admitted having purchased a stun gun before the confrontation. His description of the encounter differed from Medrano's account of the events she witnessed. Appellant confirmed he moved Patel into the bushes and that he left without reporting the incident.

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." <u>Pugh v. Commonwealth</u>, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982). "Murder at common law is a homicide committed with malice, either express or implied." <u>Id.</u> Second-degree murder does not require a specific intent to kill. <u>See</u> <u>Rhodes v. Commonwealth</u>, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). "It is quite clear that one may slay maliciously without actually intending to kill." Ronald J. Bacigal, <u>Criminal Offenses and Defenses</u> 339 (2011-12). If he acts with malice, the accused need only intend "to perform the conduct" causing the victim's death. <u>Id.</u> at 340.

Malice inheres in the "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." <u>Dawkins v. Commonwealth</u>, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" <u>Canipe v. Commonwealth</u>, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997) (quoting <u>Essex v. Commonwealth</u>, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984)).

> Malice . . . is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished. . . . [Proof of] malice . . . require[s] . . . a wrongful act . . . done "willfully or purposefully." This requirement of volitional action is inconsistent with inadvertence. Thus, if a killing results

4

from [criminal] negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be implied[, and the offense constitutes manslaughter]. In order to elevate the crime to second-degree murder, the defendant must be shown to have willfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm.

Essex v. Commonwealth, 228 Va. 273, 280-81, 322 S.E.2d 216, 219-20 (1984) (citation omitted) (quoting Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)). "Whether the defendant acted with malice is a question for the trier of fact." Id. at 280, 322 S.E2d at 220.

Voluntary manslaughter is the unlawful killing of another without malice, actual or implied, upon a sudden heat, reasonable provocation, or in mutual combat. See Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389,393 (1953) (quoting Read v. Commonwealth, 63 Va. (22 Gratt.) 924, 937-38 (1872)).

For combat to be "mutual," it must have been voluntarily and mutually entered into by both or all parties to the affray. See Smith [v. Commonwealth], 17 Va. App. [68,] 72, 435 S.E.2d [414,] 417 [(1993)]. It is settled that "[o]ne who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as mutual combat." Harper v. Commonwealth, 165 Va. 816, 820, 183 S.E. 171, 173 (1936).

Lynn v. Commonwealth, 27 Va. App. 336, 356, 499 S.E.2d 1, 10 (1998), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999).

Appellant repeatedly states in his petition that there was no evidence he intended to kill Patel. He also asserts that "[t]he circumstances surrounding the incident that night do not support the hypothesis that [he] purposefully caused the head trauma seen in Mr. Patel." Appellant contends the evidence failed to establish he acted with malice and instead the two were engaged in mutual combat.

As noted above, second-degree murder does not require proof of any specific intent. See Tizon v. Commonwealth, 60 Va. App. 1, 11, 723 S.E.2d 260, 265 (2012). The Commonwealth must merely prove "'a

5

malicious purpose to do the deceased a serious personal injury or hurt.'" Id. (quoting Dock's Case, 62 Va. (21 Gratt.) 909, 913 (1872)). Here the record supports the jury's conclusion that appellant purposefully engaged in conduct likely to cause death or bodily harm. Appellant traveled to appellant's residence in order to confront him and armed himself with a stun gun beforehand. Medrano's description of the encounter between appellant and Patel demonstrates appellant, without provocation, repeatedly attacked Patel with the stun gun until Patel fell to the ground. Appellant then moved Patel to a secluded location while Patel called for help. Appellant did not leave the area until Patel was silent, suggesting he continued his attack on the injured man after moving him into the bushes. Rather than calling for emergency help, appellant then fled the scene.

"Evidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances." Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833 (1990) (en banc) (explaining that acts or conduct of accused after the crime may tend to show consciousness of guilt). Furthermore, the jury, as fact finder, could consider appellant's changing stories to law enforcement authorities about Patel's death as evidence that he was "attempting to conceal his guilt by making inconsistent explanations." Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 179-80 (1988) (en banc).

An appellate court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. at 193, 677 S.E.2d at 282 (quoting Jackson, 443 U.S. at 319). Thus, when a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). An "appellate court is no substitute for a jury." Id.

This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). Thus, a fact finder may "draw reasonable inferences from basic facts to ultimate facts," Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (citation omitted), unless doing so would push "into the realm of non sequitur," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

The trier of fact was not required to accept appellant's trial testimony. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). The jury was entitled to conclude that appellant lied and to infer that he testified untruthfully in order to hide his guilt. See Daung Sam v. Commonwealth, 13 Va. App. 312, 320, 411 S.E.2d 832, 837 (1991). The jury rejected appellant's testimony and accepted Medrano's account of the events.

Under settled principles, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Scott v. Commonwealth, 55 Va. App. 166, 172, 684 S.E.2d 833, 837 (2009) (en banc) (citation omitted). "Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." Cooper v. Commonwealth, 54 Va. App. 558, 573, 680 S.E.2d 361, 368 (2009) (quoting Clanton v. Commonwealth, 53 Va. App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (en banc)).

Stated another way, "[m]erely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Clanton, 53 Va. App. at 573, 673 S.E.2d at 910 (quoting Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964)). Thus, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational fact finder could have found the incriminating evidence renders the hypothesis of innocence unreasonable."

> James [v. Commonwealth], 53 Va. App. [671,] 682, 674 S.E.2d [571,] 577 [(2009)] (citing indirectly [Commonwealth v.] Hudson, 265 Va. [505,] 513, 578 S.E.2d [781,] 785 [(2003)]). In practical terms, this means that—even if not "inherently incredible"—a defendant's exculpatory version of events need not be accepted by the fact finder. Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980).
>
> Tizon, 60 Va. App. at 12-13, 723 S.E.2d at 265.
> Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support a finding that the victim's death was the result of appellant's deliberate and cruel act and that appellant acted with malice. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of second-degree murder.

(Id. at 1-6 (alterations in original).) The Court of Appeals of Virginia denied the petition for appeal. (Id. at 1.) A three-judge panel of the Court of Appeals of Virginia also denied Ali's petition for appeal. (Id. at 8.) The Supreme Court of Virginia refused Ali's subsequent petition for appeal. (Id. at 9.)

Ali filed a petition for writ of habeas corpus in the Supreme Court of Virginia raising all three of his claims in the § 2254 Petition. (See ECF No. 35-3, at 6-31.) The Supreme Court of Virginia dismissed Ali's habeas petition. (ECF No. 35-4, at 86.) The Supreme Court of Virginia denied Ali's petition for rehearing. (Id. at 87.) Ali subsequently filed the instant § 2254 Petition.

## II. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher

threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

Respondent does not contest that Ali raised his three claims in his state habeas petition before the Supreme Court of

10

Virginia. In its dismissal of Ali's habeas petition, the Supreme Court of Virginia identified several subparts to each of Ali's claims. Ali attached to his § 2254 Petition, inter alia, seventy-nine pages of support for his three claims. Ali's attachments are rambling and extremely repetitive, and contain differently phrased statements of his claims than presented on his § 2254 Petition form.[2] Ali's supporting argument weaves back and forth between his claims in no logical fashion. Ali also has provided no subparts to his claims and the Court identifies no discernable subparts in his rambling narrative.[3] Ali's § 2254 Petition form also provides no assistance to the Court in identifying whether his claims are the same as those he raised in state court. Where the form asks whether Ali exhausted his state remedies for Claim One, Ali appears to indicate that this was not a claim that he raised. (§ 2254 Pet. 6.) Ali also indicates that he only raised Claims Two and Three "through a

_____

[2] For example, in Claim One on the § 2254 Petition form, Ali indicates that his claim is about counsel failing to interview the key witness and cross-examine her to reveal her bias towards Muslims. (§ 2254 Pet. 6.) Ali's statement of Claim One in his attachment fails to mention that this claim is based on bias. (ECF No. 26-5, at 4.)

[3] Ali's attachments are comprised largely of Ali's lengthy recitations of alleged quotations from interview transcripts and reports. Upon closer inspection, a large portion of Ali's attachments appear to be identical copies of the same pages. (See ECF No. 26-5, at 8-11; ECF No. 26-6, at 2-5.) Ali fails to adequately explain and the Court fails to discern how these large sections of alleged testimony have any bearing on the claims Ali raises.

post-conviction motion or petition for habeas corpus in a state trial court." (Id. at 8-10.)

Based on the Court's review of the record, and the arguments made in Respondent's Motion to Dismiss, the Court assumes that Ali intends to raise what was identified by the Supreme Court of Virginia as Claims 1, 2(i), and a portion of Claim 3. As discussed in detail below, the Court has reviewed the entirety of Ali's § 2254 Petition and attachments, and the state court record, and concludes that the Supreme Court of Virginia's determination that Ali's claims lack merit is not unreasonable.

Because the Supreme Court of Virginia first addressed the claim that Ali presents in his § 2254 Petition as Claim Two, and the opinion refers back to that analysis in later discussions, the Court also reviews Claim Two first.

## A. Claim Two - Failure To Interview And Impeach Key Witness

In Claim Two, Ali argues that counsel rendered ineffective assistance because he "failed to impeach Ms. Parada[4] with the help of clear and convincing evidence" that she provided a more thorough statement the following day after speaking to detectives than she had provided the night of the incident.

---

[4] Ali refers to the witness as Ms. Parada. According to the state court record, the witness's full name was Digma Medina De Prada Medrano. From this point forward, the Court changes any reference to the name "Ms. Parada" to Medrano.

12

(Id. at 8.) Ali believes that counsel failed to use Medrano's initial statements that were less thorough to impeach her later statements where she provided more detail about her observations. (Id.) In Ali's state habeas petition, these two claims were presented scattered across portions of state habeas Grounds 1 and 2. (ECF No. 35-3, at 6-18.) The Supreme Court of Virginia divided Claim Two into subparts, and for ease of reference, the Court similarly divides Claim Two as follows:

> (a) Counsel rendered ineffective assistance by failing to impeach the key witness, Medrano, based on evidence her testimony was coached. (See, e.g., ECF No. 26-6, at 1, 7, 30-31.)

> (b) Counsel rendered ineffective assistance because counsel disregarded Ali's request to impeach Medrano's testimony by playing for the jury the recorded 911 call. (Id. at 19; § 2254 Pet. 8.)

> (c) Counsel rendered ineffective assistance because counsel disregarded Ali's request to interview Medrano before trial. (ECF No. 26-6, at 1.)[5]

In explaining and rejecting Claim Two(a) here, the Supreme Court of Virginia found:

> In portions of claims (1) and (2)(i), petitioner contends he was denied the effective assistance of counsel because counsel did not make a "motion to impeach" the Commonwealth's "key witness," Digma Medina De Prada Medrano, based on evidence her testimony was "coached" by Detective Daniel Bibeault and the Spanish language interpreter who assisted Bibeault in interviewing Medrano. Petitioner explains

---

[5] The Court notes that Ali also includes the substance of Claim Two (c) in his supporting argument for Claim One. Because Claim One is more focused on Medrano's alleged bias, the Court addresses this subpart in conjunction with Claim Two.

13

Medrano witnessed petitioner's late-night altercation with his victim, Bharat Patel ("Bharat"), in the parking lot of the apartment complex where Bharat lived with his wife, Saraswati Patel ("Saraswati") and that Medrano gave three -pretrial accounts of what she witnessed. Petitioner claims Medrano's third account, given to Detective Bibeault several hours after police discovered Bharat's body, materially differed from her first two accounts, one of which she gave to a 911 operator and the other which she gave to two officers who initially responded to Medrano's 911 call. Petitioner alleges the changes in Medrano's statement and her corresponding trial testimony were the result of Detective Bibeault or his interpreter supplying Medrano with a substantial amount of information so that her testimony would agree with the physical evidence and inculpate petitioner.

As evidence of such police misconduct, petitioner identifies ways in which Medrano's statement to Detective Bibeault contradicted or added to the statements she gave to the 911 operator and the two responding officers. Petitioner cites also that, when asked whether an interpreter was present during her interview with Detective Bibeault, Medrano responded, "[T]o explain to me what happened." Petitioner recalls that, when counsel asked Medrano what led her to assume petitioner was carrying a weapon in his pocket, Medrano answered, "Because of the way in which he led me to believe I supposed it was that." Petitioner contends the "he" in Medrano's answer refers to Detective Bibeault. Finally, petitioner notes Medrano's suggestion at trial that she told the two officers who responded to her 911 call everything she knew during the approximately thirty-five minutes she spoke with them. Petitioner appears to allege these circumstances should have alerted counsel to the fact that portions of Medrano's testimony were supplied by the police and that counsel should have brought this misconduct to the jury's or the court's attention.

The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The evidence petitioner claims proves Medrano's testimony was improperly coached is not as strong as petitioner contends. That Medrano's accounts of petitioner and Bharat's fight changed,

conflicted, or became more detailed over time does not clearly suggest police misconduct. Nor do Medrano's statements at trial clearly raise the specter of such impropriety. Accordingly, without more information, counsel reasonably did not argue or claim that Medrano testified to information supplied to her by police.

Additionally, petitioner has not alleged that, had counsel investigated the issue further or pressed it at trial, he would have uncovered information more convincingly establishing Detective Bibeault's alleged misconduct. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner's failure to allege "what an adequate investigation would have revealed or what . . . witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim). The record, including the trial transcript, demonstrates that counsel cross-examined Medrano regarding several inconstancies [sic] between her trial testimony and her prior statements. Counsel highlighted inconsistencies in Medrano's claims regarding (1) her proficiency speaking English, (2) when she left her brother's house the night she saw petitioner attack Bharat, (3) how many times she saw petitioner pass in front of her car before he attacked Bharat, (4) whether she saw petitioner punch Bharat, (5) whether she saw both petitioner and Bharat run from the scene after their altercation, and (6) whether she told one of the officers who responded to her 911 call that the "victim" was wearing a gray shirt with an orange stripe, which was consistent with the shirt petitioner was wearing during the altercation. In light of this last, helpful bit of information and Medrano's general obstinance on cross-examination, counsel's closing argument makes clear that his strategy was to show Medrano witnessed Bharat attack petitioner and later changed her account of what transpired because she was overly eager to help the Commonwealth secure a conviction. Counsel's strategy in this regard was reasonable considering that petitioner told police Bharat attacked him but also admitted (1) having an affair with Saraswati that Bharat had recently discovered, (2) repeatedly shocking an unarmed Bharat with a stun gun, (3) dragging Bharat's body into some bushes after he fell, hit his head, and became unconscious, (4) fleeing the scene without providing or calling for help, (5) discarding the stun gun and the clothes he was

wearing, and (6) lying to police about the incident until confronted with the fact there was a witness. Petitioner has not explained how confronting Medrano's inculpating testimony in a different manner would have been more effective. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 35-4, at 78-80.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Although Ali spends pages devoted to lengthy recitations of Medrano's statements to police and picks out what he believes are inconsistencies or "movie like description[s] of the event" (see, e.g., ECF No. 26-6, at 8), Ali fails to identify any error in the Supreme Court of Virginia's decision concluding that counsel was neither deficient nor was Ali prejudiced.

Medrano was a difficult witness for both the Commonwealth and the defense because she clearly spoke and understood some English, but also had a Spanish interpreter during trial, and she frequently answered the question in English before receiving the translation. Medrano often refused to answer the questions in a clear manner or her answer was nonresponsive despite repeated admonitions by the Court to only answer the question asked of her. Nevertheless, Medrano consistently testified that she saw Ali grab the victim, make contact many times with the victim's body with an object that omitted blue light, and then

16

dragged the victim behind bushes.  (Sept. 16, 2013 Tr. 177-81.)
Medrano heard the victim yelling for help and then approximately
two minutes after the screams stopped, Medrano saw Ali come out
of the bushes with the object in his hand and start running
away.  (Sept. 16, 2013 Tr. 182-83.)  Counsel attempted to
discredit Medrano through cross-examination by identifying
inconsistencies in her testimony, such as disparities about the
time of the incident, the amount of times she saw Ali walk past
her car, what the victim was wearing, whether she actually saw a
weapon, and whether she could see at all because it was dark.
(Sept. 16, 2013 Tr. 197-207, 211-14.)  Counsel highlighted
Medrano's inconsistent testimony to the jury in his closing
argument.  (Sept. 23, 2013 Tr. 66-68.)  Counsel also advanced an
argument that Medrano "was all wound up to tell a story to prove
the government's case for them."  (Sept. 23, 2013 Tr. 65.)
Despite counsel's attempts to discredit Medrano, the jury found
her credible.[6]  Counsel's impeachment strategy was reasonable,

---

[6] The Court notes that Medrano's 911 call was in Spanish,
however, she provided her account to the officers who arrived at
the scene in English and she testified at trial that she had no
problem communicating with the officers in English because her
statement was "brief and specific."  (Sept. 16, 2013 Tr. 189-90;
see Sept. 17, 2013 Tr. 24, 52.)  On redirect, Medrano stated
that a translator was present when she spoke with Detective
Bibeault the following morning.  (Sept. 16, 2013 Tr. 216.)  From
the Court's review of the record, it is conceivable that any
inconsistencies in her testimony were due to the language
barrier and that Medrano's provision of greater detail the

and Ali fails to demonstrate that any further attempt to discredit Medrano by suggesting that the police had coached her would have changed the jury's verdict. Ali fails to establish any deficient performance by counsel or any resulting prejudice. Accordingly, Claim Two(a) will be dismissed.

Similarly, in Claim Two(c), Ali faults counsel for ignoring his request to interview Medrano prior to trial. Ali contends that such an interview "could [have] divulge[d] elicit essential impeachment evidence." (§ 2254 Pet. 6.) In rejecting Claim Two(c) here, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel disregarded petitioner's direction to interview Medrano pre-trial. Petitioner claims that, had counsel done so, he would have learned investigators improperly coached Medrano's testimony.
> The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner proffers no factual support for his speculation that Medrano would have agreed to speak with counsel or that she would have divulged evidence of police misconduct. Thus, petitioner has failed to demonstrate that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 35-4, at 81-82.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Presumably Ali also believes that a pre-trial interview would have picked up on the

following morning was because she now had the assistance of a translator to communicate with the police.

same inconsistencies in Medano's statements to police, the alleged coaching by police, and any bias of Medrano. However, Ali fails to identify, beyond speculation, what information a pre-trial interview of Medrano would have revealed beyond what the defense already knew. See Bassette, 915 F.2d at 940-41 (explaining that petitioner's failure to allege "what an adequate investigation would have revealed or what . . . witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim). Ali also fails to direct the Court to any error in the Supreme Court of Virginia's conclusion. Because Ali demonstrates neither deficiency of counsel nor resulting prejudice, Claim Two(c) lacks merit and will be dismissed.

In Claim Two(b), Ali contends that counsel disregarded Ali's request to impeach Medrano's testimony by playing for the jury the recorded 911 call. (ECF No. 26-6, at 19; § 2254 Pet. 8.) Ali insists that playing this call would "prove her inconsistencies." (ECF No. 26-6, at 19.) In rejecting Claim Two(b) here, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel disregarded petitioner's direction to impeach Medrano's testimony by playing for the jury the recording of Medrano's 911 call. Petitioner claims counsel also disregarded his direction to impeach Medrano by introducing the incident reports of the two officers who initially responded to Medrano's 911 call.

The Court holds that this claim satisfies neither the "performance" nor "prejudice" prong of the two-part test enunciated in Strickland. First, the extrinsic evidence petitioner identifies as recording Medrano's pre-trial statements would have been admissible only if Medrano "denie[d] or [did] not remember [her] prior inconsistent statement[s]." Va. Sup. Ct. R. 2:613(a)(ii). Petitioner has not alleged any instance in Medrano's testimony where this foundational predicate occurred. Additionally, as described above, counsel questioned Medrano on numerous aspects of her inconsistent statements, and petitioner has not explained how extrinsic evidence of those statements would have materially altered the jury's perception of Medrano's credibility. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 35-4, at 81 (alterations in original).) The Court again discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). To the extent that Ali faults counsel for failing to introduce the 911 call to impeach Medrano's testimony at trial, as the Supreme Court of Virginia explained, that evidence would be barred from admission on state law grounds. Ali fails to direct the Court to any law or evidence that demonstrates that the Supreme Court of Virginia's conclusion is incorrect, much less unreasonable. See 28 U.S.C. § 2254(d)(1)-(2); Richardson v. Branker, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state

law . . . , a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."); cf. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Moreover, the inconsistencies Ali points to in support of this claim are minor in light of the overwhelming evidence of his guilt: whether Medrano only saw a blue spark not a gun; whether Medrano changed her testimony about the color of the victim's shirt; and, whether she could see the altercation clearly. (ECF No. 26-6, at 19.) Counsel questioned Medrano about a number of inconsistencies in her statements, and Ali fails to demonstrate that the introduction of her statements to police or the 911 call would have changed the jury's determination that her testimony was credible. Ali fails to demonstrate any deficiency of counsel or resulting prejudice, and accordingly, Claim Two(b) will be dismissed.

**B.  Claim One - Bias of Key Witness**

In Claim One, Ali argues that counsel rendered ineffective assistance when he "failed to conduct a pre-trial investigation [and] interview Ms. [Medrano] which could [have] divulge[d] elicit essential impeachment evidence." (§ 2254 Pet. 6.) Ali contends that Medrano was biased against him because she believed that he was a "Muslim extremist terrorist." (Id.) In

Ali's state habeas petition, this claim was presented in part of state habeas Claims 1 and 2. (See ECF No. 35-4, at 9, 16-18.)[7]

In explaining and rejecting Ali's Claim One presented here, the Supreme Court of Virginia found:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to adequately present evidence of Medrano's racial animus toward persons of petitioner's national origin, Bangladesh. Petitioner explains that, when speaking to police investigating Bharat's death, Medrano said she was scared because, the day after she called 911, she believed a man with a large beard driving a silver car followed her. According to a memorandum recounting an investigator's conversation with Medrano, Medrano perceived the man to be a certain race or nationality and stated, "[I]f these people can put bombs in buildings, imagine what they can do to me - a housewife." Medrano believed her being followed was somehow connected to the fight she witnessed between petitioner and Bharat and, accordingly, she did not speak with police further.
>
> The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Assuming counsel was aware of Medrano's alleged xenophobia, counsel reasonably could have decided not to broach

---

[7] Buried in his supporting attachment, Ali also suggests that counsel should have "interview[ed] Ms. Sara Patel who had the center role of the whole situation." (ECF No. 26-5, at 6.) This suggestion that counsel should have interviewed Ms. Patel has absolutely no bearing or relationship to his stated Claim One, that counsel failed to properly root out Medrano's bias. Ali provides a list of five things an interview of Ms. Patel could possibly reveal. (Id. at 17.) However, Ali fails to proffer sufficiently what favorable evidence or testimony an interview of Ms. Patel would have produced. Ali's terse and conclusory allegations insufficiently demonstrate deficient performance or prejudice under Strickland. Bassette, 915 F.2d at 940-41; see Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations").

the subject at trial. As described above, counsel's goal was to show Medrano accurately described petitioner as the victim during one of her initial statements to police and that she later changed her story because she was eager to help the police. Counsel could have reasonably determined this was a sounder tactic than attempting to ascribe Medrano's shifting accounts of what she witnessed to racial animus or paranoia. For similar reasons, there no indication the jury might have been more skeptical of Medrano's testimony had counsel adopted the strategy petitioner suggests instead of the one counsel employed. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 35-4, at 80-81 (second alteration in original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Although Ali spends pages devoted to lengthy recitations of Medrano's statements to police and what he believes are inconsistencies, almost none of this supporting argument addresses his claim that he believed Medrano was biased towards him, or that counsel was ineffective for failing to interview her or cross-examine her on that basis. At most, Ali simply repeats that Medrano was fearful for her life and was biased against him. (See, e.g., ECF No. 26-5, at 5.) Ali fails to identify any error in the Supreme Court of Virginia's decision. Because Ali fails to demonstrate any deficiency of counsel or resulting prejudice, Claim One will be dismissed.

## C. Claim Three - Failure To Question Medical Experts

In Claim Three, Ali contends that "[c]ounsel didn't [(a)] examine the medical expert, Dr. Diangelo, [and, (b)] did not call the court-appointed expert for the defense, Dr. Fowler, who could testify regarding Mr. Patel's accidental death [which] resulted [in] error." (§ 2254 Pet. 9.) Ali believes counsel could have elicited testimony from both medical experts that would show he was guilty of nothing more than involuntary manslaughter. (ECF No. 26-7, at 17.)

With respect to Claim Three(a), Ali argues that counsel failed to cross-examine Dr. Diangelo, who he believes was a "bias[ed] state examiner who was helping the state to secure a conviction," about the destruction of her notes taken during the victim's autopsy. (Id. at 6.) Ali believes that because Dr. Diangelo's report indicated that the victim died from "blunt head trauma," and no one witnessed Ali hit the victim in the head, if counsel had more thoroughly questioned Dr. Diangelo, the jury would have convicted him of involuntary manslaughter, not second-degree murder. (Id. at 6, 17.)

In rejecting this claim, the Supreme Court of Virginia found:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to cross-examine the Commonwealth's medical expert, Dr. Constance Diangelo, regarding her destruction of notes taken during Bharat's autopsy, Petitioner appears to

contend counsel might have elicited evidence petitioner was guilty only of manslaughter,

> The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of a September 9, 2013 hearing, demonstrates that counsel successfully moved to limit Dr. Diangelo's testimony after it was discovered she destroyed notes she took during Bharat's autopsy. However, that Dr. Diangelo destroyed her notes would not have been affirmative evidence of petitioner's mens rea in connection with Bharat's death. Likewise, generally discrediting Dr. Diangelo's autopsy technique or conclusions would not have directly supported a claim that petitioner was guilty only of manslaughter. In any event, counsel drew on Dr. Diangelo's conclusion that Bharat died from blunt force trauma to the head to support his argument that petitioner did not intentionally inflict Bharat's mortal wound. Petitioner has not suggested that this defense strategy is misguided. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 35-4, at 85.)   The Court discerns no unreasonable application of the law and no unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).   Because the autopsy report indicated that the victim died from blunt head trauma (see Sept. 17, 2013 Tr. 267), counsel reasonably chose not to cross-examine Dr. Diangelo, but instead pursued a line of defense that the report demonstrated that the victim did not die from Ali's use of the stun gun or from any malicious, intentional infliction of injury by Ali.   (See Sept. 23, 2013 Tr. 72, 78-80.)   Counsel argued extensively in his closing

25

argument that Ali lacked the requisite intent for either first or second-degree murder. (Sept. 23, 2013 Tr. 73-74, 80-89.)[8] Ali fails to explain how any further questioning of the medical examiner about the destruction of her notes would have had any bearing on this defense. Accordingly, Ali fails to show deficiency of counsel or resulting prejudice, and Claim Three(a) will be dismissed.

In Claim Three(b), Ali contends that counsel failed to call the court-appointed expert for the defense, Dr. Fowler, who could testify regarding Mr. Patel's accidental death [which] resulted [in] error." (§ 2254 Pet. 9.) Ali offers little more to support this claim other than that Dr. Fowler's testimony would have purportedly "supported the Defendant's version of the story." (See ECF No. 26-7, at 20.)

In rejecting Claim Three(b), the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to present testimony from Dr. David Fowler, a forensic pathologist appointed to assist petitioner. Petitioner explains Dr. Fowler reviewed Dr. Diangelo's autopsy of Bharat and could have testified to her "negligence" in destroying her notes, which petitioner contends could have yielded his conviction for manslaughter.
> The Court holds that this claim satisfied neither the "performance" nor the "prejudice" prong of the

---

[8] In order to convict Ali of first-degree murder, the jury was required to find that the murder was "willful, deliberate, and premeditated." Va. Code Ann. § 18.2-32 (West 2018).

two-part test enunciated in Strickland. As described above, counsel relied on Dr. Diangelo's conclusions regarding Bharat's cause of death to support counsel's contention that petitioner did not intentionally inflict the injury that killed Bharat. Additionally, without more, generally discrediting Dr. Diangelo would not have yielded material evidence petitioner killed Bharat intentionally or accidentally. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 26-6, at 85-86.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Ali offers nothing more than a vague, unsupported conclusion, that Dr. Fowler's review of the medical examiner's report would have bolstered his defense. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); Bassette, 915 F.2d at 940-41 (requiring proffer of mitigating evidence to state claim of ineffective assistance); see also Sanders, 373 U.S. at 19 (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). Thus, Ali's terse and conclusory allegations insufficiently demonstrate deficient performance or prejudice under Strickland. Accordingly, Claim Three(b) lacks merit and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 33) will be granted. Ali's § 2254 Petition will be denied and his claims dismissed. A certificate of appealabilty will be denied.[9]

The Clerk is directed to send a copy of Memorandum Opinion to Ali and counsel of record.

It is so ordered.

/s/ *REP*

Robert E. Payne
Senior United States District Judge

Date: *December 28, 2018*
Richmond, Virginia

---

[9] Buried in his attachments and labeled as an exhibit to his § 2254 Petition, Ali requests that the Court appoint an investigator to question Medrano (ECF No. 26-9.) To the extent that his request is properly before the Court, it will be denied.